IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARILYN MARGULIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 4:14-cv-1462-SNLJ |
| GENERATION LIFE INSURANCE COMPANY, | ) ) ) | |
| and | ) ) | |
| SPRING VENTURE GROUP, LLC, | ) ) | |
| and | ) ) | |
| OPEN MARKET QUOTES, LLC, d/b/a GENERATION LIFE INSURANCE, | ) ) ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff Marilyn Margulis, on behalf of herself and all others similarly situated (hereinafter sometimes referred to as "Plaintiffs" and "the Class"), and for her Second Amended Complaint against Defendants Generation Life Insurance Company ("Generation Life"), Spring Venture Group, LLC ("SVG"), and Open Market Quotes, LLC d/b/a Generation Life Insurance ("OMQ") (hereinafter collectively referred to as "Defendants" except where qualified with the name(s) of specific Defendants), states:

### Introduction

1.      This action is brought against Defendants for violation of the Telephone Consumer Protection Act, 47 U.S.C. 227, *et seq*. ("TCPA") based on Defendants' practice of placing, or causing to be placed, telemarketing calls to Plaintiff's and the Class members'

1

residential telephone lines using an artificial or prerecorded voice offering to sell Defendant Generation Life Insurance Company's insurance products without obtaining the prior express written consent of Plaintiff and the Class members.

## Parties

2.      Plaintiff Marilyn Margulis is a resident and citizen of the State of Missouri.

3.      Defendant Generation Life Insurance Company is an insurance company registered with the Missouri Department of Insurance, organized and existing under the laws of the State of Arizona, with its principal place of business at 147 Bear Creek Pike, Columbia, Tennessee 38401.

4.      Defendant Spring Venture Group, LLC is a foreign limited liability company registered with the Missouri Secretary of State, organized and existing under the laws of the State of Delaware, with its principal place of business at 2301 McGee, Fourth Floor, Kansas City, Missouri 64108.

5.      Defendant Open Market Quotes, LLC d/b/a Generation Life Insurance is a foreign limited liability company registered with the Missouri Secretary of State, organized and existing under the laws of the State of Kansas, with its principal place of business at 2301 McGee, Fourth Floor, Kansas City, Missouri 64108.

## Jurisdiction and Venue

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7.      This Court has personal jurisdiction over Defendant Generation Life because it is licensed to and does conduct the business of insurance in the State of Missouri, it has made contracts within this state, solicited business in Missouri, engaged in a persistent course of

conduct in Missouri, and/or has committed tortious acts within this state, thus it has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Missouri.

8.     This court has personal jurisdiction over Defendant SVG because the company's principal place of business is located in the State of Missouri at 2301 McGee Street, Fourth Floor, Kansas City, Missouri 64108, it has solicited business in Missouri, has engaged in a persistent course of conduct in Missouri, and/or has committed tortious acts within this state, thus it has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Missouri.

9.     This court has personal jurisdiction over Defendant OMQ d/b/a as Generation Life Insurance because the company's principal place of business is located in the State of Missouri at 2301 McGee Street, Fourth Floor, Kansas City, Missouri 64108, it has solicited business in Missouri, has engaged in a persistent course of conduct in Missouri, and/or has committed tortious acts within this state, thus it has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Missouri.

10.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District.

**Allegations Common to All Counts**

A.     **Relationship Between Defendants**

11.     Defendant Generation Life provides insurance products to consumers utilizing "an online and call center sales model." *See* Exhibit 2. Defendant Generation Life has been referred to as "a new technology-based life insurance provider." *See* Exhibit 3. Defendant

Generation Life offers life insurance products in at least twenty-two (22) states. *See* Exhibit 2. The exclusive marketing lead generator for Defendant Generation Life is Defendant SVG, a firm specializing in lead generation and direct response marketing. *See* Exhibit 3.

12.    Defendant SVG is a company that bills itself as "Experts in the sale of Health & Life Insurance," that generates sales and marketing leads for Defendant Generation Life.  *See* Exhibit 4.  Defendant SVG "is a sales and marketing firm specializing in direct-to-consumer insurance distribution."  *See* Exhibit 9. Defendant SVG has publicly stated: "What makes us a unique organization is our emphasis on providing high quality marketing and leads to our sales advisors so that they can focus all of their efforts on being productive on the phone. We create a customer experience that meets our clients [sic] needs while also saving them the most money possible."[1] *See* Exhibit 4. According to ICANN, the website www.SpringVentureGroup.com was registered by Defendant SVG and is also owned and operated by Defendant SVG.[2] *See* Exhibit 5. Defendant SVG also shares the same physical address as Defendant OMQ.  *See* Exhibits 6 and 7. Defendant SVG's registered agent is the same as Defendant OMQ—Miranda LaHaie, vice president of human resources at Defendant SVG. *See* Exhibits 8, 16-17.  Additionally, Defendant SVG's vice president of finance, Scott Campbell, has filed documents with governmental agencies on behalf of both Defendants OMQ and SVG. *See* Exhibits 14 and 15. Defendant SVG has publicly stated "There are currently three companies under the SVG umbrella: United

---

[1] Spring Venture Group, LLC, http://www.springventuregroup.com/ (last visited July 2, 2014)
[2] Internet Corporation for Assigned Names and Numbers, http://whois.icann.org/en/lookup?name=www.springventuregroup.com, (last accessed on April 20, 2015)

Medicare Advisors, Generation Life Insurance, and Open Market Quotes."[3]  *See* Exhibits 9 and 13.

13.      Defendant OMQ registered "Generation Life Insurance" as a fictitious registration in Missouri and has publicly stated that it offers insurance products for Generation Life Insurance Company: "With Open Market Quotes, the right policy is matched to the right client in a matter of minutes."  *See* Exhibits 1, 11 and 20.  Defendant OMQ has also publicly stated that its "in-house marketing and technology teams work to provide qualified leads at the velocity needed … to ensure only strong leads are reaching our agents and giving them the most opportunities to close deals every day."[4]  *See* Exhibit 11.  According to ICANN, the website www.OpenMarketQuotes.com was registered by Defendant SVG and is also owned and operated by Defendant SVG.[5]  *See* Exhibit 12.  Defendant OMQ also shares the same physical address of Defendant SVG. Defendant OMQ's registered agent is the same as Defendant SVG—Miranda LaHaie, vice president of human resources at Defendant SVG. *See* Exhibits 8, 16-17. Additionally, Defendant SVG's vice president of finance, Scott Campbell, has filed documents with governmental agencies on behalf of both Defendants OMQ and SVG. *See* Exhibits 14 and 15.  Further, Defendants OMQ and Generation Life are under the umbrella of Defendant SVG. [6] *See* Exhibits 9 and 13.

---

[3] Ingram's "Best Companies to Work For" Honors Spring Venture Group, http://www.marketwired.com/press-release/ingrams-best-companies-to-work-for-honors-spring-venture-group-1916311.htm (last visited on April 20, 2015).
[4] Open Market Quotes, LLC, http://www.openmarketquotes.com/ (last visited April 20, 2015).
[5] Internet Corporation for Assigned Names and Numbers, http://whois.icann.org/en/lookup?name=www.openmarketquotes.com (last accessed on April 20, 2015).
[6] Ingram's "Best Companies to Work For" Honors Spring Venture Group, http://www.marketwired.com/press-release/ingrams-best-companies-to-work-for-honors-spring-venture-group-1916311.htm (last visited on April 20, 2015).

14.     Upon information and belief, Chris Giuliani ("Giuliani") is the chief executive officer of Defendant SVG. Giuliani has publicly stated that Defendant SVG operates Generation Life, and that he is also the executive in charge of Defendant Generation Life.  *See* Exhibit 10. Giuliani further claims that "Generation Life provides innovative, affordable and convenient life insurance products utilizing SVG's platform as the exclusive distribution channel."[7] *See* Exhibit 10.

15.     Upon information and belief, Defendants SVG and OMQ, on behalf of Generation Life, make telemarketing calls to consumers in an attempt to sell Generation Life's insurance products.  During the first part of the call, a pre-recorded or artificial voice talks about the availability of insurance products and asks for certain information from the consumer.  After the consumer provides answers to the questions asked by the pre-recorded or artificial voice, the call is then routed through further pre-recorded messages and then a "licensed agent" comes onto the call, who then attempts to sell insurance products on behalf of Defendant Generation Life, based upon predetermined factors and information obtained from the consumer during the first part of the call.

16.     Upon information and belief, Defendant Generation Life has authorized Defendants SVG and OMQ to engage in, *inter alia*, the following:

(a)     to access information and systems that would normally be within
        Defendant Generation Life's exclusive control;

(b)     to enter information into Generation Life's systems;

(c)     to use Defendant Generation Life's trade name; and

---

[7] Chris Giuliani, LINKEDIN.COM, http://www.linkedin.com/in/chrisgiuliani (last visited July 2, 2014).

(d)      to make telemarketing calls to consumers offering to sell Defendant

Generation Life's insurance products.

17.      Upon information and belief, Defendant Generation Life approved, wrote, or

reviewed Defendants SVG and OMQ's telemarketing scripts used in the telemarketing calls at

issue herein.

18.      Upon information and belief, Defendant Generation Life contracted with

Defendants SVG and OMQ to make the calls at issue herein which attempted to sell Generation

Life's insurance products.

19.      At all times herein mentioned, Defendant Generation Life utilized Defendants

SVG and OMQ to make the unlawful telemarketing calls on its behalf. Defendant Generation

Life had actual and/or constructive knowledge of the acts of Defendant SVG and OMQ, and

authorized, approved, acquiesced and ratified the unlawful telemarketing.

20.      Together, these Defendants contacted, or caused to be contacted, on Defendant

Generation Life's behalf, Plaintiff and Class Members on their residential telephone lines using

an artificial or prerecorded voice to deliver a message, without Plaintiff's and Class members'

prior express permission.

21.      Upon information and belief, Defendants SVG and OMQ were authorized to act,

and did act, as representatives and/or agents of Defendant Generation Life, and Defendant

Generation Life exercised sufficient control over Defendants SVG and OMQ, including the

telemarketing methods and/or practices, and SVG and OMQ were at all such times acting within

the scope and course of their agency with Defendant Generation Life, thus making Defendant

Generation Life vicariously liable for said actions.

22.     Defendant Generation Life knew (or reasonably should have known) that Defendants SVG and OMQ were violating the TCPA on Defendant Generation Life's behalf, and that Defendant Generation Life failed to take effective steps to stop the violations.

23.     Defendant Generation Life knew or should have known that the calls were being placed by Defendants SVG and OMQ to residential telephone lines of Plaintiff and the Class.

24.     Defendant Generation Life had the ability to know that the calls were being placed by Defendants SVG and OMQ to residential telephone lines of Plaintiff and the Class.

25.     Defendants SVG and OMQ had the ability to know that the calls were being placed to Plaintiff's and the Class' residential telephone lines.

26.     Defendants knew or should have known that they were making calls to numbers assigned to residential telephone line subscribers, including Plaintiff and the Class, who had not provided prior express permission or invitation.

27.     Defendants knew or should have known that they were utilizing an artificial or prerecorded voice to deliver a message to numbers assigned to residential telephone line subscribers, including Plaintiff and the Class, who had not provided prior express permission or invitation to Defendants.

28.     By making such unauthorized calls, Defendants violated the TCPA, and additionally, caused Plaintiff and the Class members actual harm, including invasion of privacy and the aggravation and nuisance that accompanies the receipt of such telemarketing calls.

**B.     The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227**

29.    In 1991, Congress enacted the TCPA[8] in response to a growing number of consumer complaints regarding certain telemarketing practices.

30.    The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers" or the use of an artificial or prerecorded voice to deliver a message.

31.    Specifically, 47 U.S.C. §227(b)(1)(B) prohibits the use of any call to a residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party in the absence of an emergency or exempt by rule or order of the Commission. [9]

## C.    The Use of Scripted, Pre-Recorded Voice Technology to Place Telemarketing Calls

32.    New technology has developed in recent years that allows telemarketers to place scripted, pre-recorded voice-response calls using  a "telemarketing robot,"[10] "agent-assisted automation technology," "voice conversion technology," "outbound IVR," or "cyborg telemarketing."[11]

33.    Outbound IVR has been called "the new spam" and "is being embraced by telemarketers," and according to a recent article on the well-respected technology blog, www.arstechnica.com:

---

[8] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[9] As of October 16, 2013, prior express *written* consent is required before placing such calls. *See* 47 C.F.R. 64.1200(a)(3).

[10] Denver Nicks, *Robot Telemarketer Employer: Samantha West is No Robot*, Time, (December 17, 2013), http://newsfeed.time.com/2013/12/17/robot-telemarketer-samantha-west/. (last visited April 20, 2015).  An audio sample of the use of such technology is available at this website.

[11]  Alexis C. Madrigal, *Almost Human: The Surreal, Cyborg Future of Telemarketing,* The Atlantic  (Dec.  20,  2013),   http://www.theatlantic.com/technology/archive/2013/12/almost-human-the-surreal-cyborg-future-of-telemarketing/282537/ (last visited April 20, 2015)

> "Outbound IVR is the latest evolution of the robo-call—a telemarketing system that uses the technology of voice response systems we've used to navigate through the call queues of insurance agencies and banks and turns it around to make pitch calls. These calls can be on voice-over-Internet protocol (VoIP) lines or other connections that mask the source of the call. We're getting used to talking to computers, thanks to voice response systems that act as the guardians of many organizations' phone systems. The technology was originally patented by AT&T in 2006, but is now being offered by a range of companies, such as CallFire, PlumVoice, and Nuance—the cloud voice recognition company behind Siri, Cortana and other interactive systems."

Available at http://arstechnica.com/information-technology/2015/04/the-new-spam-interactive-robo-calls-from-the-cloud-as-cheap-as-e-mail/ (last visited April 23, 2015)

34.    Telemarketing calls using these technologies attempt to mimic a human caller, but in reality, it is a series of pre-recorded phrases that are generated in response to the called party's questions or comments during the call. The scripted, pre-recorded phrases are either triggered automatically by a computer or by a human operator that triggers the system to make the scripted, pre-recorded responses.  One example of this type of technology commonly known is the use of the voice recognition and artificial intelligence system known as Siri on Apple iPhones.

35.    In TIME magazine's January 16, 2014 article titled *Meet Jacob Hall, the Rogue Telemarketing Cyborg,* and example of this type of new telemarketing technology is discussed:

> Every time Jacob Hall calls, the conversation goes about the same. "Hello, this is Jacob, how are you today?" he begins.
>
> "I'm fine, Jacob," you might respond. "How are you?"
>
> "I'm doing fine, thanks for asking. I'll make this brief. I'm calling from the National Tax Help Center and we might be able to help you eliminate 70 to 90 percent of your liability, and in some cases even more…."
>
> As a conversationalist, Hall sounds friendly enough at first, but then his awkward pauses and repetitive phrases make it obvious there's something unnatural about him. When asked directly, Jacob will deny that he's a robot, or that he is a soundboard being manipulated by a real person deploying pre-

10

recorded messages, or even that he's making a sales call. But even as much about him remains a mystery, one thing is clear: Jacob Hall does lie.

Jacob is one of a growing legion of cyborgs conducting telemarketing operations that walk a thin line between creepy and outright illegal. After receiving calls in December from a similar recorded voice, who called herself Samantha West, TIME has been looking into the sources of these weird, unsettling telemarketing calls. What we found in Jacob's case was even weirder. The company that effectively "employs" him claimed no knowledge of his work, and could not trace how he got hired.

The technology that enables both Hall and West is so new that many people who receive their calls do not know they are speaking with a recorded voice.

Available    at    http://newsfeed.time.com/2014/01/16/meet-jacob-hall-the-rogue-telemarketing-cyborg/ (last visited April 20, 2015).

36.    Upon information and belief, Defendants used this same or substantially similar technology, as discussed above, to place or cause to be placed the telemarketing calls to Plaintiff and the Class, using an artificial or pre-recorded voice in an attempt to sell Defendant Generation Life's insurance products.

**D.    The Pre-Recorded Telemarketing Call to Plaintiff's Residential Telephone Line**

37.    At all times relevant herein, Plaintiff has been the subscriber to the residential telephone lines (636) 536-6678, (636) 536-2177, and (636) 536-7022.

38.    On or about January 3, 2014, a telephone call was placed to Plaintiff's residential telephone line offering to sell Defendant Generation Life's insurance products. The call came in on one of her residential telephone lines ending in 6678, 2177 or 7022 in St. Louis County, Missouri.

39.    Plaintiff's caller identification system listed the calling number as "Life Enrollment" 1-630-869-1320.

11

40.     Plaintiff's husband Max Margulis ("Plaintiff's husband"), a member of the residence, answered the call. Upon answering the call, Plaintiff's husband noticed there was a delay before the voice on the other end of the call joined the telephone conversation.

41.     Upon information and belief, Defendants' call to Plaintiff's residence utilized the same or substantially similar technology described above as a "telemarketing robot," "agent-assisted automation technology," "voice conversion technology," "outbound IVR," or "cyborg telemarketing."

42.     A transcript of the call is as follows:

| | |
|---|---|
| Voice: | How are you today? |
| Plaintiff's husband: | Good. |
| Voice: | The reason for my call today is several top "A" rated life insurance companies have *amazing* rates on low cost term life insurance… |
| Plaintiff's husband: | What was your name again? (overlapping talking) |
| Voice: | Right now this special offer… yes... |
| Plaintiff's husband: | Ok. |
| Voice: | Ok sorry that wasn't clear um, can you say that again? |
| Plaintiff's husband: | What was your name? |
| Voice: | This is Jean Monroe. |
| Plaintiff's husband: | Oh, how are you? |
| Voice: |  I'm doing fine, thanks for asking. |
| Plaintiff's husband: | Ok. |
| Voice: | Can we continue? |
| Plaintiff's husband: | Yes. |
| Voice: | The reason for my call today is several top "A" rated life insurance companies have *amazing* rates on low cost term life insurance. Right now this special offer may save as much as 70% on your life insurance. $500,000 in coverage could be as little as $28 a month. |
| Plaintiff's husband: | That's a great deal. |
| Voice: | Have you ever been diagnosed with cancer, had a heart attack or heart disease, diabetes, or a stroke? |
| Plaintiff's husband: | No. |
| Voice: | Are you currently on disability or receiving disability income? |
| Margulis: | No. |

12

| | |
|---|---|
| Voice: | Well it looks like you qualified to receive a no obligation free quote from a licensed agent in your state. Hold the line while I briefly get a licensed agent to join the call, ok? |
| Plaintiff's husband: | Ok. |
| Voice: | Hold on. |
| Plaintiff's husband: | (Unintelligible) |
| Voice: | Your call is very important to us. Please stay on the line, and you will be transferred to the next available agent. |

(Clicking noise)

| | |
|---|---|
| Voice: | Thank you; hang on while we connect you. We believe you deserve the best service; hang on someone will be right with you. Thanks for… |

(Clicking noise)

| | |
|---|---|
| Voice: | [unintelligible] Life Insurance. To confirm your interest in receiving a new life insurance quote today, please press 1. For customer service, please press 2. |
| Plaintiff's husband: | [Plaintiff's husband pressed 1] I'm not interested, but I want to know who's calling me. |
| Voice: | Thank you for calling **Generation Life Insurance**. To confirm your interest in receiving a new life insurance quote today, please press 1. For customer service please, press 2. |
| Plaintiff's husband: | Not really interested, but (Unintelligible) (Plaintiff's husband pressed 1) |
| Voice: | Sorry, I didn't hear you. Good bye. |

(Call terminated)

43.    Plaintiff's husband remained on the line all throughout the entire call. Throughout the entire duration of the call, Plaintiff's husband recognized that the call was a pre-recorded or artificial voice because he heard awkward pauses, repetitive phrases (including identical script, cadence of the voice, and inflection of the voice), responses, and other conduct of the voice that were both unnatural and inconsistent with a conversation taking place with a live person. The call was then abruptly terminated, but not by Plaintiff's husband.

13

44.     Upon information and belief, the delay before the voice on the other end of the call joined the telephone conversation is also indicative of the use of an autodialer and/or artificial or prerecorded voice that was used by Defendants to call Plaintiff's residence.

45.     Defendants' telephone call to Plaintiff's residence was not made for an emergency purpose.

46.     Defendants did not have the prior express written permission to make the telephone call to Plaintiff's residence.

47.     The telephone to Plaintiff's residence was made for a commercial purpose (*i.e.*, to sell Defendant Generation Life's insurance products.

48.     Upon information and belief, Defendants made the same or substantially similar telephone calls to numerous other residential telephone lines in the United States, using an artificial or prerecorded voice to deliver a message without the prior express written permission of the called parties.

49.     Defendants failed to correctly determine the legal restrictions on the use of calls made to residential telephone numbers and the application of those restrictions to the calls, generally, and specifically as to Plaintiff.

50.     Defendants engaged in calls to Plaintiff and other members of the class believing such calls were legal based on Defendants own understanding of the law and/or based on the representations of others on which Defendants reasonably relied.

51.     Defendants did not intend to make calls to Plaintiff and other members of the class, where such calls were not authorized by law or by the recipient, and to the extent that any call was sent to any person and such call was not authorized by law or by the recipient, such

transmission was made based on either Defendants' own understanding of the law and/or based on the representations of others on which Defendants relied.

52.     As a direct and proximate result of Defendants' making of said telephone calls to Plaintiff and the Class, Plaintiff and the Class have sustained damages, specifically causing destruction of or interference with their exclusive use of their property, interference with their personal residential communications, and invading their right of privacy to be left alone and maintain seclusion in their own residences.

53.     Each of the telephone numbers that Defendants SVG and OMQ, acting on behalf of Defendant Generation Life, called to contact Plaintiff and members of the Class with an artificial or prerecorded voice was assigned to a residential telephone line as specified in 47 U.S.C. § 227(b)(1)(B).

54.     As the Defendants acted in concert to place the illegal calls in violation of the TCPA, liability for these violations is joint and several among all Defendants.

55.     The artificial voice used by Defendants SVG and OMQ at the beginning of the call to Plaintiff's residence informed consumers that "[s]everal top 'A' rated life insurance companies have *amazing* rates on low cost term life insurance. Right now this special offer may save as much as 70% on your life insurance. $500,000 in coverage could be as little as $28 a month."  The prerecorded or artificial voice also told consumers to stay on the line.

56.     Throughout the duration of the call, Plaintiff's husband heard an artificial or prerecorded voice that told him, *inter alia*: "Thank you for calling **Generation Life Insurance**. To confirm your interest in receiving a new life insurance quote today, please press 1. For customer service please, press 2." Thus, Defendants SVG and OMQ, upon information and belief, had authority to use Defendant Generation Life's trade name. As such, Defendants SVG

15

and OMQ are apparent agents of Defendant Generation Life.  Further, at all times relevant herein, both Defendants SVG and OMQ use or have used Defendant Generation Life's trade name or trademark on their respective websites. *See* Exhibits 13 and 18.

57.    Upon information and belief, Defendant Generation Life's contracts with Defendant SVG and OMQ call for consumers to be directed to specific local insurance agents of Defendant Generation Life based on predetermined criteria, such the consumer's geographic and/or consumer profile.

58.    By providing information to Defendants SVG and OMQ in order that Defendants SVG and OMQ could direct consumers to licensed agents, Defendant Generation Life allowed SVG and OMQ access to information and systems that normally would be within the Generation Life's exclusive control, including access to detailed information regarding the nature and pricing of the seller's products. Defendant Generation Life's lack of repudiation of the acts of Defendants SVG and OMQ is an endorsement of those acts.  As such, Defendants SVG and OMQ are apparent agents of Defendant Generation Life.

59.    Defendants SVG and OMQ transferred customer information, including Plaintiff's husband information, directly to licensed agents of Defendant Generation Life. Thus, Defendants SVG and OMQ have the ability to enter consumer information into the Generation Life's systems. As such, Defendants SVG and OMQ are apparent agents of Defendant Generation Life.

60.    By causing Defendants SVG and OMQ to make calls on its behalf to generate sales of its products, Defendant Generation Life manifested assent to SVG and OMQ that they act on its behalf and subject to its control. Similarly, by accepting these contacts, Defendants

SVG and OMQ manifested assent or otherwise consented to act on behalf of Defendant Generation Life. As such, Defendants SVG and OMQ are agents of Defendant Generation Life.

61.     In the alternative, Defendant Generation Life repeatedly ratified Defendants SVG and OMQ's illegal marketing scheme by knowingly accepting the benefits of Defendants SVG and OMQ's activities when it accepted leads and/or customers from Defendants SVG and OMQ.

62.     Upon information and belief, Defendant Generation Life was aware of Defendants SVG and OMQ's marketing scheme and that Defendants SVG and OMQ were making calls using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party when it accepted the marketing leads from Defendants SVG and OMQ.

## Class Certification

63.     Plaintiff incorporates by reference all other paragraphs of this Amended Complaint as if fully stated herein.

64.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Rule 23 of the Federal Rules of Civil Procedure.

65.     Plaintiff proposes to represent a class defined as:

All persons in the United States whose residential telephone lines were called by

SVG and/or OMQ using an autodialer and/or artificial or prerecorded voice

offering to sell Generation Life insurance products during the four (4) years

immediately preceding the filing of the lawsuit herein.

66.     Excluded from the Class are the Defendants, their subsidiaries and affiliates, the Defendants' agents and employees, and any Judge presiding over this action.

17

67.     **Rule 23(a)(1).**  The members of the Class are so numerous that individual joinder of all Class members is impracticable.  Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes the number of Class members, at a minimum, is in the thousands who have been harmed by Defendants' actions.   The precise number of Class members may be ascertained from Defendants' records and files or from other sources.

68.     **Rule 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether Defendants SVG and OMQ, acting on behalf of Defendant Generation Life, used an automatic telephone dialing system in making non-emergency calls to Class members' residential  telephone lines;

(b)     Whether Defendants SVG and OMQ, acting on behalf of the Defendant Generation Life, used an artificial or prerecorded voice in its non-emergency calls to Class members' residential telephone lines;

(c)     Whether the Defendants can meet their burden of showing they obtained prior express consent to make such calls;

(d)     Whether the Defendants' conduct was knowing and/or willful;

(e)     Whether the Defendants are liable for statutory damages; and

(f)     Whether the Defendants should be enjoined from engaging in such conduct in the future.

69.     **Rule 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were injured through the uniform prohibited conduct described above. Plaintiff is a member of the class she seeks to represent.  Plaintiff seeks

18

the same relief for herself as she seeks for all class members, and such claims for relief are based on the same legal theories and on the same common nucleus of operative facts surrounding Defendants' telemarketing activities.  Plaintiff's interests are the same as the interests of the class she seeks to represent.

70.     **Rule 23(a)(4).** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she seeks the same relief for herself and the members of the Class; she has retained counsel experienced in class action and complex litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

71.     **Rule 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Plaintiff seeks no relief that is antagonistic to the interests of the Class, and, thus, no one member of the Class has any greater interest in controlling the litigation of these claims than any other. Additionally, all of the claims should be tried before this Court, as concentration in one forum is desirable to avoid multiple trials of the common issues.  The damages or other financial detriment suffered by Plaintiff and the Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, and are therefore not likely to deter the Defendants from engaging in the same behavior in the future so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. By contrast, the class action device presents efficient management, and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court. Accordingly, class-wide relief is essential to compel the Defendants to comply with the TCPA.

72.    **Rule 23(b)(1).**  The prosecution of separate actions by individual members of the class would create a risk of:

(a)    inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, and/or

(b)    adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

73.    **Rule 23(b)(2).** Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## Count I - TCPA

74.    Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as if fully set forth herein.

75.    Defendants' actions, as alleged herein, violate 47 U.S.C. § 227(b)(1)(B) which makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)."

76.    Defendants' calls to the residential telephone lines of Plaintiff and the Class were not initiated for any emergency purpose and are not exempted by rule or order by the Federal Communications Commission.

77.     Defendants knew they were making the telephone calls to Plaintiff and the Class using an automated telephone dialing system.

78.     Defendants voluntarily engaged in making the telephone calls to Plaintiff and the Class using an automated telephone dialing system.

79.     Defendants knew they were making the telephone calls to Plaintiff and the Class using an artificial or prerecorded voice to deliver a message.

80.     Defendants voluntarily engaged in making the telephone calls to Plaintiff and the Class using an artificial or prerecorded voice to deliver a message.

81.     Neither Plaintiff nor the other members of the Class gave prior express consent to Defendants to make the calls.

82.     Defendants' actions in placing calls to Plaintiff and other members of the Class violated their right to privacy.

83.     Plaintiff and the other members of the Class are entitled to recover the statutory liquidated damages that Congress has assigned and prescribed in the TCPA for the statutory violations complained of herein.

84.     Defendants' actions, as alleged herein, were knowing and/or willful and therefore should be required to pay treble damages pursuant to 47 U.S.C. §227(b)(3)(B).

85.     As a direct and proximate result of Defendants' actions described herein, Plaintiff and the Class have sustained damages.

### Count II - Injunctive Relief

86.     Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as if fully set forth herein.

87.     As provided by 47 U.S.C. §227(b)(3)(A), Defendants should be permanently enjoined from calling Plaintiff and the Class' residential telephones using any automatic telephone dialing system or using an artificial or prerecorded voice to deliver a message without the prior express permission of the Plaintiff and the Class members.

88.     Allowing Defendants to continue to initiate said telephone calls will cause further injury and damages to Plaintiff and the Class as well as other persons and entities who are not yet members of the proposed Class.

**Prayer for Relief**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A.     An order certifying the class, as described above;

B.     An order Appointing Plaintiff as representative of the Class and Plaintiff's counsel as counsel for the Class;

C.     Entering an Order enjoining Defendants from the engaging in the unlawful acts and practices described herein;

D.     Entering judgment against Defendants and in favor of Plaintiff and the Class in an amount equal to the amount of statutory damages allowed under 47 U.S.C. §227(b)(3)(B);

E.     If the Court finds Defendants acted knowingly or willfully, entering judgment against Defendants and in favor of Plaintiff and the Class in an amount equal to the full amount of statutory damages allowed under 47 U.S.C. §227(b)(3), including treble damages;

F.     Entering an award of prejudgment interest against Defendants and in favor of Plaintiff and the Class at the highest lawful rate;

G.     Requiring Defendants to pay attorneys' fees and costs of Plaintiff and the Class; and

H.     For such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Cyrus Dashtaki
Cyrus Dashtaki, # 57606
Dashtaki Law Firm, LLC
5205 Hampton Avenue
St. Louis, MO 63109
Telephone:   (314) 932-7671
Facsimile:   (314) 932-7672
Email:   cyrus@dashtaki.com

*Attorney for Plaintiff and all others similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 23, 2015, a true and correct copy of the above and foregoing document was filed electronically with Court's CM/ECF filing system, and was served on all counsel of record.

/s/ Cyrus Dashtaki

IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARILYN MARGULIS, individually and )
on behalf of others similarly situated, )
  )
      Plaintiffs, )      Case No.: 4:14-cv-1462-SNLJ
  )
v. )
  )
GENERATION LIFE INSURANCE )
COMPANY, *et al.,* )
  )
      Defendants. )

## INDEX OF EXHIBITS TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1.     "Generation Life Insurance" Missouri Secretary of State, fictitious name registration;

2.     April 7, 2015 Tennessee Farmers Mutual Insurance Company press release;

3.     October 18, 2012 Tennessee Farmers Insurance Company press release;

4.     www.springventuregroup.com (last accessed on July 2, 2014);

5.     http://whois.icann.org/en/lookup?name=www.springventuregroup.com, (last accessed on April 20, 2015);

6.     www.springventuregroup.com/contact (last accessed July 2, 2014);

7.     www.openmarketquotes.com/contact-us (last accessed April 20, 2015);

8.     Spring Venture Group, LLC, Application for Registration of Foreign Limited Liability Company, Missouri Secretary of State Filing;

9.     Ingram's "Best Companies to Work For" Honors Spring Venture Group, http://www.marketwired.com/press-release/ingrams-best-companies-to-work-for-honors-spring-venture-group-1916311.htm (last visited on April 20, 2015).

10.     Chris Giuliani, LINKEDIN.COM, http://www.linkedin.com/in/chrisgiuliani (last visited July 2, 2014);

11.     www.openmarketquotes.com (last accessed on April 20, 2015);

12.    http://whois.icann.org/en/lookup?name=www.openmarketquotes.com (last accessed on April 20, 2015);

13.    www.springventuregroup.com/companies (last accessed on July 2, 2014);

14.    Open Market Quotes, LLC November 3, 2014 Application for Zoning Clearance for Business License, City of Kansas City Planning & Development, Missouri;

15.    April 4, 2014 Spring Venture Group, LLC Application to Cancel Business Registration, Kansas Secretary of State;

16.    Open Market Quotes, LLC Application for Registration of Foreign Limited Liability Company, Missouri Secretary of State;

17.    www.springventuregroup.com/leadership (last accessed on July 2, 2014); and

18.    www.openmarkequotes.com/our-products (last accessed on April 20, 2015).

Respectfully submitted,

/s/ Cyrus Dashtaki
Cyrus Dashtaki, # 57606
Dashtaki Law Firm, LLC
5205 Hampton Avenue
St. Louis, MO 63109
Telephone:    (314) 932-7671
Facsimile:    (314) 932-7672
Email:    cyrus@dashtaki.com

*Attorney for Plaintiff and all others similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 23, 2015, a true and correct copy of the above and foregoing document was filed electronically with Court's CM/ECF filing system, and was served on all counsel of record.

/s/ Cyrus Dashtaki